UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SARAH LAHTI,

    Plaintiff,

vs.

CONSENSYS SOFTWARE INC., et al.,

    Defendants.

Civil Action No. 1:24-cv-183

Hopkins, J.
Bowman, M.J

### REPORT AND RECOMMENDATION

This civil action is now before the Court on Defendant Consensys Software, Inc.'s motion to dismiss (or, in the alternative, stay) this action and compel arbitration (Doc. 15), Defendant Alphabet, Inc.'s motion to dismiss for failure to state a claim (Doc. 17), and Plaintiff's motion for leave to file an amended complaint. (Doc. 26). The motions will be addressed in turn.

**I.    Consensys' Motion to Dismiss**

*A.  Allegations in the Complaint*

Plaintiff Sarah Lahti is a US citizen and resident of Cincinnati, Ohio. The complaint asserts that she is bringing this action on behalf of Sarah Ann Lahti Charitable Remainder Unitrust, an Ohio trust, of which she is the trustee. (Doc. 1, ¶ 2). The complaint alleges that Defendant Consensys Software Inc. offers a product called MetaMask and Defendant Alphabet whose product Google Chrome are both at issue in this matter. (Doc. 1).

On February 9, 2024, Plaintiff alleges that crypto currency contained in the trust's MetaMask wallet with a current value of approximately $275,000.00 USD was stolen from the trust in some sort of computer hack. (Doc. 1, ¶ 4). Plaintiff alleges that she did not realize the funds had been stolen until approximately two weeks after the fact, as she had

no reason to think there was a problem. Id. ¶ 4. Plaintiff further claims that the alleged theft happened while she was on vacation in Kuwait City, Kuwait. Plaintiff states that she took necessary security precautions surrounding her use of the MetaMask wallet, including that she never gave her wallet information, including password, seed phrase, and login ID, out to anyone at any time before the alleged security breach of the wallet. Id. ¶ 5.

Plaintiff alleges that she never initiated any MetaMask transactions on February 9, 2024, and yet, transactions occurred out of the wallet that lead to the theft of the crypto currency tokens in question. Id. at 6. Because of the more permanent nature of the block chain technology used, Plaintiff claims that it is fairly easy to ascertain that these transactions occurred, and that the plaintiff did not initiate them, nor have any knowledge of them.

Plaintiff asserts that she contacted MetaMask through their customer support system, so they have had approximately a month to rectify this situation and have not. In addition, Plaintiff notes that she has already opened a case with the FBI.

Based on the foregoing, Plaintiff asserts that Consensys (1) "violated her civil rights through breach of contract" under 41 U.S.C. § 6503; (2) violated the "consumer protection act"; and (3) breached a "fiduciary responsibility to [its] clients to protect client assets appropriately." Id. Plaintiff seeks $10 million in compensatory damages; $2 billion in punitive damages; and the creation of "a charitable trust set up and funded for the purpose of crypto[currency], computer, and mobile phone safety, privacy, and consumer protection to be run and overseen by" her. Id

### B. MetaMask Software

MetaMask is a leading cryptocurrency self-custodial software wallet offered by Consensys. (Doc. 15, Herman Decl. ¶ 3). It serves as a digital wallet, allowing users to securely manage their cryptocurrencies directly from their web browsers or mobile devices. Id. It is designed to facilitate the sending, receiving, and storage of digital currencies without requiring users to provide personal information or create a standard account. Id. MetaMask operates as an extension for web browsers and as a standalone mobile app, making it convenient for users to interact with their cryptocurrency and access various online applications that support digital transactions. Id.

Upon downloading the browser extension version of MetaMask on Google Chrome (or another internet web browser), the user is sent to an onboarding screen that the user must complete before using MetaMask.  A user, like Plaintiff, must assent to Consensys's Terms of Use (TOU) for MetaMask before they are able to use MetaMask. Id., ¶ 5.

### C. MetaMask's Terms of Use (TOU)

Before creating a MetaMask wallet or importing an existing wallet for use with MetaMask, the user must check a box indicating "I agree to MetaMask's Term of Use," which is available to access by way of a prominent blue hyperlink. Id. That is, a user cannot proceed to "Create a new wallet" or "Import an existing wallet" for use with MetaMask until he or she clicks the box acknowledging his or her agreement to the TOU. Id.

Clicking the hyperlink takes the user to the TOU, which "contain[s] the terms and conditions that govern" the user's "access to and use of the Site and Offerings." (Doc. 15, Ex. 1, TOU at 1). The term "Offerings" is defined to include all "products and services"

3

offered by Consensys, including "MetaMask." Id. at 1 & § 1.2 ("Consensys offers a number of Offerings," which "include MetaMask"). Section 1.1 of the TOU provides the user "may access and use the Offerings only in accordance with this Agreement."

At the very top of MetaMask's Terms of Use, a notice in all-caps states:

> THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 11. PLEASE READ THE AGREEMENT CAREFULLY.

Id. at 1.

Section 11 of the TOU contains a broad Arbitration Agreement that requires the user to arbitrate any dispute related to the TOU or the user's use of MetaMask before JAMS.

> Specifically, Section 11.1 of the TOU provides that: Any dispute, claim or controversy ("Claim") relating in any way to this Agreement, the Site, or your use of the Offerings will be resolved by binding arbitration as provided in this Section 11, rather than in court, except that you may assert claims in small claims court if your claims qualify. Section 11.1.1 adds that any arbitration will be conducted subject to the JAMS rules, that the Arbitration Agreement is subject to the Federal Arbitration Act (the "FAA"), and that the TOU itself is governed by Texas law

Id. at 22.

Section 11.1.1 also includes a broad Delegation Clause that provides that "[t]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement including any claim that all or any part of the Agreement is void or voidable." Id. at 23.

4

D. *Analysis*

Defendant Consensys contends that the Complaint should be dismissed, and Plaintiff be compelled to arbitrate her claims before the Judicial Arbitration and Mediation Services, Inc. (JAMS). The undersigned agrees.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq, reflects a strong federal policy favoring arbitration. *Decker v. Merrill Lynch, Pierce, Fenner & Smith*, 205 F.3d 906, 911 (6th Cir. 2000). It "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Pursuant to the FAA, a written agreement to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Before compelling arbitration pursuant to a contractual arbitration provision, however, the Court must make four threshold determinations:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout*, 228 F.3d at 714) (internal quotations omitted). Upon a finding of arbitrability, the Court must order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. "[T]he party resisting arbitration

5

bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

    1.  *Plaintiff agreed to MetaMask's TOU and therefore agreed to arbitration*

The TOU is known as clickwrap agreement. Such agreements "require the user to manifest assent . . . by clicking an icon" before using a product. *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 (6th Cir. 2013). "Ohio courts have held that clicking a 'clickwrap agreement' is an acceptable method to manifest assent to the terms of an agreement." *Page v. Gamestop Corp.*, 2024 WL 1638989, at *5 (N.D. Ohio Apr. 16, 2024); see, e.g., *Wolfe v. J.C. Penney Corp.*, 111 N.E.3d 126, 131 (Ohio. Ct. App. 2018) (holding that the plaintiff's "act of electronically signing the form [by clicking on a check box] is sufficient to demonstrate that she agreed to arbitration"). "This is so even where the user has failed to actually review the terms of use prior to manifesting assent." *Campinha-Bacote v. AT & T Corp.*, 2017-Ohio-5608, ¶ 13 (Ohio Ct. App. 2017); *Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 652 (Ohio Ct. App. 2021) (holding that, where terms of use were available via a hyperlink and the plaintiff clicked an icon indicating his agreement to those terms, he was on "constructive notice" of, and thus bound by, the terms' arbitration provisions).

Here, because Plaintiff "was required to click" an icon manifesting her assent to the TOU before using MetaMask and as such, she agreed to the arbitration of claims against MetaMask. R*anazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 218 (Ohio. Ct. App. 2015).

### 2. Plaintiff's claims are arbitrable under the agreement

Next, the Court determines whether a party's claims are arbitrable under that agreement. The FAA permits parties to agree that an arbitrator, not a court, "'will determine gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 68–69 (2010)). When faced with a delegation provision, as detailed above in MetaMask's TOU, the Court's role is limited to determining whether the provision "constitute[s] a clear and unmistakable delegation of questions of arbitrability." *Hendricks v. Total Quality Logistics*, LLC, 2021 WL 7967692, at *4 (S.D. Ohio Mar. 25, 2021). If it does, "the Court 'possesses no power to decide the arbitrability issue.'" *Stansberry v. Raising Cane's USA, LLC,* 2023 WL 6200314, * 1 (S.D. Ohio Sept. 22, 2023).

Here, the Arbitration Agreement contains a Delegation Clause, which provides that:

> the arbitrator, and not any federal, state, or local courts shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement including any claim that all or any part of the Agreement is void or voidable.

(Doc. 15, Ex. TOU § 11.1.1)

In light of the foregoing, Defendant contends that even if Plaintiff disputes arbitrability, the Delegation Clause leaves nothing for this Court to do except refer the dispute for arbitration. *See, e.g., In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (in data hack case, compelling arbitration pursuant to delegation clause that provided that "the arbitrator . . . shall have exclusive authority to resolve any

7

dispute arising out of or relating to the interpretation, applicability, enforceability or formation of [the] Agreement to Arbitrate, any part of it, or of the Terms including, . . . any claim that all or any part of [the] Agreement to Arbitrate or the Terms is void or voidable" because "[s]uch language alone is clear and unmistakable evidence" that an arbitrator is to address gateway questions of arbitrability); *Williams v. Santander Consumer USA Inc.*, 2024 WL 1049894, at *3 (S.D. Ohio Mar. 11, 2024) ("The plain language of the Contract leaves arbitrability of plaintiff's claims to the arbitrator. As such, any threshold question regarding the enforceability or applicability of the Contract's arbitration provision should be left to the arbitrator."), report and recommendation adopted, 2024 WL 1332416 (S.D. Ohio Mar. 28, 2024); *Hutzell v. Power Home Solar, LLC*, 2023 WL 4932068, at *9 (S.D. Ohio Aug. 2, 2023) (interpreting similar language to constitute a delegation clause and compelling arbitration). The undersigned agrees.

3. *Plaintiff's claims are subject to Arbitration*

In response to Defendant's motion, Plaintiff argues against arbitration asserting that TOU is illegal and null and void. Namely, she contends that Consensys made false representations about MetaMask's safety. She further argues that Consensys' operation of MetaMask violates a host of federal and state statutes. Plaintiff's contentions lack merit.

As detailed above, the TOU's Delegation Clause specifically provides that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to" the "enforceability" of the TOU, "including any claim that all or any part of the Agreement is void or voidable." (Doc. 15, at p. 11–12 (quoting TOU § 11.1.1). The Plaintiff's challenges relating to the enforceability of the agreement should

8

be decided by the arbitrator and not this Court. Moreover, Plaintiff does not contest the enforceability of the Delegation clause. Notably, as outlined by the Sixth Circuit, a court must enforce a delegation clause, notwithstanding a plaintiff's claim that the agreement in which it appears is void or voidable, unless the plaintiff mounts a meritorious and "specific challenge" to the clause's enforceability. See *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).

Here, as noted by Defendant, Plaintiff's arguments "pertain to the enforceability of the agreement as a whole" as opposed to the enforceability of the Delegation Clause, Plaintiff makes no mention of the Delegation Clause at all—and likewise does not even attempt to establish that it is unenforceable. *See De Angelis v. Icon Ent. Grp. Inc*., 364 F. Supp. 3d 787, 795 (S.D. Ohio 2019) (holding that a plaintiff failed to make a specific challenge to a delegation clause where she did not "even mention the delegation clause" in her opposition brief); *Hubbell v. NCR Corp*., 2018 WL 3008489, at *3 (S.D. Ohio June 14, 2018) ("This Court need not address her substantive unconscionability argument, however, because none of her procedural unconscionability arguments specifically mentions the delegation provision.").

Accordingly, Consensys motion to compel arbitration should be granted and the case be stayed pending the outcome of the arbitration proceedings.[1]

**II. Defendant Alphabet's Motion to Dismiss (Doc. 17)**

Also before the Court is Defendant Alphabet's motions to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Alphabet argues, inter alia, the Complaint fails to identify any conceivable

---

[1] See *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024)( if a party requests that the court instead stay the case pending the outcome of the arbitration proceedings, the court *must* stay the case " 'until [the] arbitration' has concluded").

9

cause of action against Alphabet, which is mentioned only a single time in the Complain. Alphabet argues that it is not a proper defendant as it is only a parent corporation, and cannot be held liable for the alleged acts of a subsidiary. The undersigned agrees.

*A. Subject matter jurisdiction under Rule 12(b)(1)*

Motions to dismiss under Rule 12(b)(1) can assert either facial attacks or factual attacks on a court's subject matter jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Where a facial attack on the subject matter jurisdiction alleged by the complaint is made, the moving party merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Id.* The court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

A motion to dismiss based on subject matter jurisdiction generally must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)) (explaining that a Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction).

*B. Failure to state a claim under Rule 12(b)(6)*

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. The Court is required to construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Lewis*

*v. ACB Business Servs., 135 F.3d 389*, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences that are presented as factual allegations. *Id.* A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Id.* at 406. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and alterations omitted). Factual allegations therefore "must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

    C. *Defendant Alphabet's Motion to Dismiss is Well-Taken*

As detailed above, Plaintiff's complaint alleges that $275,000.00 of cryptocurrency held in her Meta Mask wallet was stolen in some sort of computer hack. (Doc. 1, ¶ 4). With respect to Defendant Alphabet, Plaintiff's complaint states, *in toto:*

> Defendant #2, Alphabet, Inc., whose product, Google Chrome, and whose relationship to Defendant #1 [Consensys, Inc.], and whose business practices are at issue here.

(Doc.1, ¶ 2).[2]

Based on the above, Alphabet asserts that Plaintiff does not allege that Alphabet took, or failed to take, any action. Plaintiff likewise does not identify a single cause of

---

[2] The Court may take judicial notice that Alphabet is a holding company and is the parent company of the subsidiary Google LLC ("Google"). *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 480 n.3 (2023).

action directed towards Alphabet. (Doc. 1). Nor does she allege any injury or harm caused by Alphabet.

Here, upon careful review, the undersigned finds that Plaintiff's claims against Alphabet are properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because her claims are wholly unsubstantial and devoid of merit. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (Courts lack subject matter jurisdiction under Rule 12(b)(1) when a complaint is "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). Namely, the complaint provides no factual content or context from which the Court may reasonably infer that Defendant Alphabet violated Plaintiff's rights under federal law.[3]

In response to Defendant's motion, Plaintiff raises several new claims against Consensys, Inc. and non-party Google LLC, but fails to address the merits of Alphabet's motion to dismiss. As noted by Defendant, "a plaintiff cannot add new claims to [her] complaint in an opposition to a motion to dismiss." *Edwards v. Warner-Lambert*, Case No. 2:05-cv-657, 2012 WL 2156246, *6 (S.D. Oh. June 13, 2012) (dismissing pro se plaintiff's claim because it was first alleged in response to defendant's motion to dismiss).

Plaintiff cannot use her opposition memoranda to attempt to add new claims or factual allegations against *Alphabet. Leeper v. HealthScope Ben.*, Case No. 2:10-cv-5401, 2020 WL 1290089, *11 (S.D. Oh. Mar. 18, 2020) (noting that "[a] motion to dismiss tests the sufficiency of the complaint, not additional facts that are set forth in response to a motion to dismiss" and finding that "it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal quotations omitted).

---

[3] Alphabet also argues that Plaintiff lacks standing, the Complaint violates federal pleading standards, and that Plaintiff has failed to state a claim for relief.

12

Accordingly, in considering Alphabet's Motion, the Court's review is limited to the claims actually included in the Complaint, and for the reasons outlined above, those claims are properly dismissed for lack of subject matter jurisdiction. *See Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, 502 Appx. 523, 541-42 (6th Cir. 2012) (finding that although the plaintiff's response to the motion to dismiss expanded the claims, the court's review was limited to the facts and legal claims as raised in the pleadings).

### III.  Plaintiff's motion to Amend (Doc. 26) is not Well-taken

Plaintiff also seeks leave of Court to file an amended complaint. "Under Rule 15(a)(1), a party may amend the complaint once as a matter of course before being served with a responsive pleading." *Broyles v. Correctional Medical Serv., Inc.*, 2009 WL 3154241 (6th Cir. 2009); *see Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). The Sixth Circuit has described this Rule as giving plaintiffs an "absolute right to amend." *Pertuso*, 233 F.3d at 421.

However, where a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Although the "court should freely give leave when justice so requires," Fed.R.Civ.P. 15(a)(2), provides that leave to amend may be denied for: (1) undue delay, (2) lack of notice to the opposing party, (3) bad faith, (4) repeated failure to cure in prior amendments, (5) prejudice to the opposing party, or (6) futility of the amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005). To survive a motion to dismiss,

13

a Complaint must contain sufficient factual allegations to state a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Here, Plaintiff's proposed amended complaint includes a new claim of fraudulent inducement and adds to the list of statues that Consensys allegedly violated. However, such proposed claims are subject to binding arbitration for the same reasons as outlined above. Notably, Plaintiff's proposed amended complaint does not challenge the enforceability of the Arbitration Agreement or Delegation Provision.

As such, Plaintiff's request to amend her complaint is futile and therefore her motion to amend (Doc. 26) should be denied.

### IV. Conclusion

In light of the foregoing, it is therefore **RECOMMENDED** that: (1) Defendant Consensys' motion to compel arbitration (Doc. 15) be **GRANTED**; and Plaintiff's claims against Consensys be **STAYED** pending the outcome of arbitration; (2) Defendant Alphabet's motion to dismiss (Doc. 17) be **GRANTED**, and Plaintiff's claims against Alphabet be **DISMISSED;** and (3) Plaintiff's motion for leave to file an amended complaint (Doc. 26) be **DENIED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SARAH LAHTI,

    Plaintiff,

vs.

CONSENSYS SOFTWARE INC., et al.,

    Defendants.

Civil Action No. 1:24-cv-183

Hopkins, J.
Bowman, M.J

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).