IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SARAH LAHTI, | : |
| *Plaintiff*, | : Case No. 1:24-cv-183 |
| vs. | : Judge Jeffery P. Hopkins |
| CONSENSYS SOFTWARE INC., et al., | : Chief Magistrate Judge Stephanie K. Bowman |
| *Defendants*. | : |

**ORDER**

This case involves two emerging technologies: cryptocurrency and artificial intelligence (AI). Plaintiff Ms. Lahti's ("Plaintiff" or "Lahti") experience in this case demonstrates why both should be approached with caution. The case also renews the age-old admonition against self-representation often credited to our nation's sixteenth president, Abraham Lincoln.[1] In this case, all these lessons collide.

---

[1] President Lincoln's career as a distinguished attorney spanned for two decades in which he is reported to have represented clients in over 5,000 cases and tried hundreds of jury and bench trials. *See* Mark E. Steiner, *An Honest Calling: The Law Practice of Abraham Lincoln* (2006).

The matter comes before the Court on the Report and Recommendation (R&R) issued by Chief Magistrate Judge Stephanie K. Bowman on March 7, 2025. Doc. 34. Plaintiff has filed objections. Doc. 35. For the reasons explained below, the Magistrate Judge's R&R is **ADOPTED IN PART**. Consensys's Motion to Compel Arbitration (Doc. 15) is **GRANTED**. Alphabet's Motion to Dismiss (Doc. 17) is **GRANTED** but without prejudice to Lahti filing an amended complaint. Lahti's Motion to Amend (Doc. 26) is **DENIED** as to Consensys but **GRANTED** as to Alphabet.

Also before the Court is a Motion to Strike filed by Consensys (Doc. 38), Plaintiff's Motion to Amend Reply (Doc. 39), and two motions for preliminary injunctive relief (Docs. 40, 41). For the reasons stated below, the Court declines to exercise jurisdiction over the motions for preliminary injunctive relief at this time and deems as moot the motion to amend reply.

## I. BACKGROUND

Plaintiff Sarah Lahti, acting pro se, brought this action against Defendants Consensys Software, Inc. and Alphabet Inc. In the Complaint, she alleges that Consensys and Alphabet are responsible for her loss of approximately $275,000 in cryptocurrency from a cryptocurrency management platform—or "wallet"—provided by Consensys and accessed through Alphabet subsidiary Google's Google Chrome browser. Compl.; *see also* Doc. 29-1.

Plaintiff alleges that Alphabet and Consensys breached their contractual obligations to her and also "operat[ed] an unlicensed financial product that engages in unfair and deceptive acts and practices." Compl., ¶ 8. Lahti seeks to be compensated for her loss of cryptocurrency, and then some; specifically, she requests $10 million in compensatory damages and $2 billion in punitive damages. *Id.* ¶ 10. Both defendants have moved to dismiss. In the case of

2

Consensys, it seeks to compel arbitration under its user agreement (Doc. 15), while Alphabet seeks dismissal for failure to state a claim (Doc. 17). In an effort to avoid dismissal, Lahti responded by seeking leave to amend her complaint. Doc. 26.

Chief Magistrate Judge Bowman tendered a Report and Recommendation on all three motions, recommending that Plaintiff's claims against Consensys be stayed pending arbitration, that her claims against Alphabet be dismissed, and her motion for leave to file an amended complaint be denied. Doc. 34.

Lahti timely filed Objections (Doc. 35), to which Consensys filed a Response (Doc. 37). Lahti filed a Reply to that Response, which Consensys seeks to strike (Doc. 38). As a result, Lahti filed a Motion to Amend her reply (Doc. 39). She then filed two motions for interim relief. *See* Doc. 40 (Motion for Temporary Restraining Order and Motion for Preliminary Injunction to Freeze Assets) *and* Doc. 41 (Supplemental Motion to Preserve Financial Evidence and for an Order Requiring Declarations or Accounting of Assets).

## II.  STANDARDS OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. LAW AND ANALYSIS

i. Motions related to claims against Consensys

Magistrate Judge Bowman recommends that Consensys's Motion to Compel Arbitration (Doc. 15) be granted. As Judge Bowman sees it, Plaintiff agreed to arbitrate her claims here by assenting to MetaMask's terms of use, Doc. 34, PageID 300, and under those terms of use, threshold questions of arbitrability are to be heard by the arbitrator. *Id.* at PageID 302–03. Because Plaintiff failed to "mount[] a meritorious and 'specific challenge'" to the enforceability of the clause delegating threshold arbitrability questions to the arbitrator, *id.* at PageID 303 (quoting *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021)), Magistrate Judge Bowman concluded the court's analysis need go no further. The R&R recommends Consensys's motion be granted and the case stayed pending the outcome of arbitration. *Id.* at PageID 303.

Lahti mounts several objections to the R&R. First, Lahti contends that the arbitration agreement is unenforceable because it is unconscionable, procured by fraud, and runs afoul of Ohio consumer protection law. Doc. 35, PageID 310–12. Second, she argues that the delegation clause itself is unenforceable, *id.* at PageID 312–15, third, that the Court, not the arbitrator should decide arbitrability, *id.* at PageID 316, and lastly, she states that the delegation clause is void under Ohio law. *Id.* at PageID 316–17.

Consensys responds that Lahti's objections are "procedurally defective" and regardless are substantively without merit. Doc. 36, PageID 340. As noted, Lahti filed a Reply (Doc. 37), which Consensys moved to strike (Doc. 38), which in turn prompted Lahti to file another pleading seeking to either amend or withdraw the Reply (Doc. 39).

For ease of understanding, the Court will address the briefing related to the Reply first.

    a. Motion to Strike (Doc. 38) and Motion to Amend (Doc. 39)

Consensys asks the Court to strike the Reply because: 1) it is not authorized by the Federal Rules of Civil Procedure, and 2) it contains fictitious case citations. Doc. 38. In response, Lahti "seeks leave to correct any errors in the reply document . . . or in the alternative, to withdraw it from the record." Doc. 39.

Federal Rule of Civil Procedure 72(b) does not permit a party objecting to an R&R to file a reply in support of its objections. Further, Lahti never sought leave of Court to file her unsanctioned reply. Both these expressed reasons form a legitimate basis for the Court to strike the Reply. *See Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 571846, *1 (S.D. Ohio Feb. 13, 2013). Accordingly, the Court **GRANTS** Consensys's Motion to Strike (Doc. 38) and **DENIES** Lahti's Motion to Amend (Doc. 39) as moot.

While it is appropriate for the Court strike Lahti's Reply on either of the bases offered by Consensys, the Court turns now to the more troublesome concern Consensys raises regarding fictitious case citations. This troubling discovery permeates the discussion pertaining to the remaining issues the Court must resolve.

Consensys identifies four fictitious case citations in Lahti's Reply. *See* Doc. 38, PageID 378. Indeed, these four supposed cases were cited by Lahti but appear to be fictitious; they cannot be found in the major commercial databases (Westlaw and Lexis).[2] Additionally, two other cases were cited with incorrect dates and reporter citations, and perhaps more

---

[2] For the cases cited that were supposedly from the Sixth Circuit, the Court further confirmed that the Sixth Circuit issued no opinion with the identified caption or a similar caption on the identified date.

5

concerningly, stand for the opposite propositions from the ones for which they are cited.³ These fictitious citations have the hallmarks of text generated by a large language model (LLM) such as ChatGPT or Google Bard. Lahti has not acknowledged the error but instead sought to "correct any errors in the reply . . . or, in the alternative, to withdraw it from the record." Doc. 39.

The solutions Lahti proposes to compensate for the harm caused by her errant filings aren't so simple or easily resolved. Submitting fictitious case citations violates one of the core principles of federal court practice, Federal Rule of Civil Procedure 11. Rule 11 holds that by presenting a "pleading, written motion, or other paper" to the court, an attorney or *unrepresented party* makes certain representations to the court regarding the contents of that motion, including that it is not being presented to "harass . . . or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1) (emphasis added), and, critically, here, that the pleading's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). See *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 466 (S.D.N.Y. June 22, 2023) (imposing Rule 11 sanctions on attorneys who filed a brief including fictitious case citations); *Alkuda v. McDonald Hopkins Co., L.P.A.*, No. 1:24-cv-1103, 2025 WL 843403, *5 n.5 (N.D. Ohio Mar. 18, 2025) ("Submitting fictitious legal citations is not permitted, whether submitted by a *pro se* litigant or a licensed attorney.").

Additionally, the Court notes that fictitious citations contained in Lahti's Reply represent a pattern of such conduct by Lahti that has occurred throughout this case; Lahti also

---

³ For example, Lahti wrote: "The Sixth Circuit similarly refused to enforce an arbitration clause in *McGrew v. VCG Holding Corp.*, 244 F.App'x 210, 214–15 (6th Cir. 2007)." However, contrary to Lahti's assertion the Sixth Circuit in that case affirmed a lower court that *had compelled* arbitration. *McGrew v. VCG Holding Corp.*, 735 F.App'x 210 (6th Cir. 2018).

6

cited fictitious cases in her Objections. *See* Doc. 36, PageID 349 n.8. However, because the Court struck Lahti's Reply as unauthorized by the Federal Rules of Civil Procedure, it need not consider Consensys's request to strike the Reply as a sanction for Lahti's misleading the Court with fictitious case citations. Nonetheless, the Court notes that such conduct *is* still sanctionable under Rule 11. *See United States v. Hayes*, 763 F.Supp.3d 1054, 1071–72 (E.D. Cal. Jan. 17, 2025) (collecting cases imposing sanctions for citing fictitious cases). Possible sanctions include striking of a pleading containing fictitious citations, *see Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024); dismissal of the offending party's complaint, *see Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, *5 (S.D. Ga. Oct. 6, 2023); and monetary sanctions, *see Mata*, 678 F.Supp.3d at 466.

The Court cautions Lahti that should any other pleading, written motion, or other paper she submits contain false citations—a likely outcome if she uses an AI program to generate pleadings—she will face severe sanctions similar in nature to those that have been leveled in the cases cited, <u>likely including monetary sanctions</u>. *See Attaway v. Illinois Dept. of Corr.*, No. 23-cv-2091, 2025 WL 1101398, *3 (S.D. Ill. Apr. 14, 2025) (explaining that courts have assessed monetary sanctions of between $2,000 to $15,000 for including fictitious cases in a brief in violation of Rule 11, and *pro se* status is "not an excuse for leniency with Rule 11," which "applies to unrepresented parties with full force.").

Imposing sanctions on litigants for misleading the Court in this way is necessary to protect the integrity of the legal system. *See Mata*, 678 F.Supp.3d at 448 ("Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. . . . It promotes cynicism about

7

the legal profession and the American judicial system."). *See also In re Martin*, No. 24 B 13368, 670 B.R. 636, 644–49 (collecting examples of monetary citations imposed in fictitious-citation cases and "announc[ing] loudly and clearly . . . that lawyers blindly relying on generative AI and citing fake cases . . . will be sanctioned."); Christina M. Frohock, *Ghosts at the Gate: A Call for Vigilance Against AI-Generated Case Hallucinations*, 130 Penn St. L. Rev. (forthcoming Winter 2025) (explaining that citing fictitious cases contravenes lawyers' duty to protect the integrity of the legal profession, because future litigants may become confused and attempt to rely on those fictitious cases).

The Court does not here condemn all uses of artificial intelligence in the time-honored practice of law, say in the instance of conducting legal research or in other ways yet invented that offer the possibility of ushering in more efficiencies into the profession, only that attorneys and pro se litigants (who assume the duties and hazards of self-representation), exercise caution, act responsibly, and importantly, never lose sight of their fundamental obligation to adhere to the strict requirements imposed on them by Federal Rule of Civil Procedure 11, lest they open themselves to having sanctions imposed by the courts whose job it is to punish litigation abuses and curb the ever-increasing costs and delay that often accompany modern civil litigation.

The case at bar epitomizes the concern. Inordinate judicial resources were expended on reviewing cases cited by Plaintiff that did not exist. No doubt Plaintiff's opponent in this litigation was forced to expend similar energies. Here, too, as noted, certain cases Plaintiff cited in support of her arguments stood for the opposite result from that which Plaintiff stated in her briefs. This kind of activity not only wastes precious and limited judicial resources, but it also drives up the cost of litigation unnecessarily for those who must defend against or seek

to prosecute claims on behalf of paying clients, given the underpinnings of the American Rule that attaches to most civil litigation in this country. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 382 (2013) ("Under the bedrock principle known as the American Rule, each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.") (citation, internal quotation marks, and alteration omitted).

If modern tools such as AI are going to be brought into the practice of law, the attorneys and pro se litigants who use it must do so with more than a modicum of caution or else they may fall into the trap of relying exclusively upon technology and not the skill, carefulness, and creativity which have always been hallmarks of competent lawyering.[4] There can be no substitute for actually reading, analyzing, and distinguishing cases in fulfilling one's obligation as a litigant to ensure that the pleadings that are filed assert "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

    b. Consensys's Motion to Compel Arbitration (Doc. 15)

Magistrate Judge Bowman recommends that Lahti's claims against Consensys be dismissed because by agreeing to MetaMasks's terms of use, she agreed that any claim against

---

[4] See, for example, Omer F. Ahmed, *Endoscopist deskilling: an unintended consequence of AI-assisted colonoscopy*, Lancet Gastroenterology & Hepatology (forthcoming in print, published online Aug. 12, 2025), https://www.thelancet.com/journals/langas/article/PIIS2468-1253(25)00164-5/abstract, suggesting that continuous use of computer-aided polyp detection (CADe or AI) might impair endoscopic performance in non-AI assisted colonoscopies. The study revealed that specialists who used CADe experienced deskilling, potentially affecting patient-related outcomes as their detection rate for polyps declined significantly in just a short amount of time after using AI.

By comparison, there is no AI equivalent for when an attorney or pro se party may be required to stand up in open court and advocate or defend an argument based on cases he or she has presumably researched and read. The human element is still essential. And an attorney's duty to know his or her arguments and the cases, rules, and statutes relied upon remains at the heart of the practice of law, no matter what technology is used to advance a client's case.

9

Consensys would be subject to arbitration. *See* Doc. 34, PageID 298–303. Lahti argues in her objections that the arbitration agreement in the MetaMask terms of use is unenforceable for various reasons, and further that the clause in that agreement requiring that issues of arbitrability be resolved by the arbitrator is unenforceable. Doc. 35, PageID 310–17. Consensys responds that Lahti's arguments are largely procedurally improper—because she did not properly raise them in her initial response to Consensys's motion to dismiss—and secondarily they are substantively without merit. *See* Doc. 36, PageID 343–44.

The Court agrees. Many of Lahti's objections are procedurally improper. As noted, the Court must make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where objections do not identify "*specific* alleged defects in the R&R," the Court need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Williams v. Excel Dev't Co., Inc.*, No. 1:24-cv-625, 2025 WL 218683, *2 (S.D. Ohio Jan. 16, 2025) (emphasis supplied) (quoting *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021)). Further, as Consensys points out, an objector is typically not entitled to *de novo* review of issues not presented to the magistrate judge. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). *See also Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.").

Guided by these principles, the Court concludes that Lahti is entitled to de novo review of her arguments regarding the enforceability of the contract itself, Doc. 35, PageID 310–12, but not as to her arguments regarding the delegation clause. Doc. 35, PageID 312–17. Her

10

objections on enforceability identify specific purported errors in the R&R, *see* Doc. 35, PageID 311, and raise issues that she previously raised before the magistrate judge. Her arguments on the delegation clause, however, meet neither of these requirements.

Validity of TOU

The Court next addresses the enforceability issues on which Lahti raised proper objections: procedural unconscionability, substantive unconscionability, fraud in the inducement, and Ohio consumer protection law. All Lathi's objections can be addressed together because they fail for the same reason: Simply put, Lahti agreed to arbitrate these issues.

Lahti contends that the MetaMask Terms of Use (TOU), containing the arbitration agreement, are unconscionable because she agreed to the operative version of the TOU under duress—she claims she agreed to the new TOU after her cryptocurrency wallet was stolen, and she believed she needed to redownload the MetaMask application, thus signing the updated TOU, in order to regain access to her cryptocurrency. Doc. 35, PageID 311. She also argues that the TOU is substantively unconscionable because the costs of arbitration may be "prohibitively high" and that the TOU is invalid because it was procured by fraud. Doc. 35, PageID 311–12.

For the reasons stated by Magistrate Judge Bowman in her well-reasoned R&R, these arguments all fail. Under the TOU, the arbitrator must first decide threshold questions of arbitrability, including "any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation" of the agreement between Lahti and Consensys. Doc. 15-2, PageID 98. The law of this circuit requires this Court to enforce a valid arbitration agreement such as the agreement at issue here. *Swiger v. Rosette*, 989 F.3d

11

501, 505 (6th Cir. 2021) ("A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'") (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)). Lahti's arguments that the TOU is unconscionable or was procured by fraud belong before an arbitrator, not this Court.

Lahti's claim that Ohio consumer protection law bars arbitration of her claims also fails. She points to no valid authority for the proposition that Ohio law bars arbitration clauses that waive certain consumer protections. The two cases she cites for this proposition, Doc. 35, PageID 312, do not, in fact, support her interpretation. In both those cases, the courts found the arbitration clauses to be enforceable. *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938; *Thomas v. Hyundai*, 2020-Ohio-3030 (8th Dist.).[5]

For these reasons, Lahti's objections to the R&R's conclusions regarding the enforceability of the TOU (sections II.A.1–5, Doc. 35, PageID 311–12) are **OVERRULED**.

Validity of Delegation Clause

As explained above, Lahti is not entitled to de novo review of her arguments regarding the delegation clause. The validity of the delegation clause was briefed in Consensys's Motion to Dismiss, *see* Doc. 15, PageID 65–67, but was not contested by Lahti in her Opposition (Doc. 20). *See also* Doc. 34, PageID 303 ("Plaintiff does not contest the enforceability of the Delegation clause."). Because enforceability of the Delegation clause was never "seasonably raised before the magistrate," *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,

---

[5] In this section of her Objections (Doc. 35, PageID 312), Ms. Lahti also cites the case *First Options of Chicago, Inc. v. Kaplan* for the proposition that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." 514 U.S. 938, 944 (1995) (citation omitted). Here, the evidence before the Court meets the clear and unmistakable standard of the parties' intent to arbitrate.

840 F.2d 985, 991 (1st Cir. 1988), it is not subject to de novo review—rather only review for clear error.

Reviewing the magistrate judge's analysis of the validity of the delegation clause for clear error, the Court identifies no such error. The delegation clause made a clear and unmistakable delegation of questions of arbitrability. Notably, the TOU called attention to its arbitration provisions, including in its first sentence. Doc. 15-2, PageID 76 ("IMPORTANT NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 11. PLEASE READ THE AGREEMENT CAREFULLY."). The Court identifies no clear error in the Magistrate Judge's conclusion that the TOU's delegation clause should be enforced. As such, Lahti's "challenges relating to the enforceability of the agreement should be decided by the arbitrator and not this Court." Doc. 34, PageID 302–03.[6]

For these reasons, Lahti's objections regarding the Delegation Clause (section II.B., Doc. 35, PageID 312–17) are **OVERRULED**.

    ii.    Alphabet's Motion to Dismiss (Doc. 17)

The Magistrate Judge recommends that Lahti's claims against Alphabet be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because the claims are "wholly unsubstantial and devoid of merit." Doc. 34, PageID 306. The Magistrate Judge noted that Lahi's complaint made scant mention of Alphabet and its subsidiary Google, only mentioning Alphabet once. *Id.* at PageID 303–04. Indeed, Plaintiff alleged that "Metamask and Google

---

[6] The Court also notes that in addition to the objections in this section being procedurally improper and non-specific, they include several fictitious case citations. Doc. 35, PageID 313 (citing to *Bray v. Lathem Time Co.*, a non-existent case—a case by that name exists, but it is from a different court than the one identified and addresses an unrelated issue); *id.* at PageID 315 (citing to *Spira v. J.P. Morgan Chase & Co.*, a non-existent case—a case by that name exists but it is from a different year, has a different citation, and addresses an unrelated issue); *id.* at PageID 316 (citing to *Rogers v. Multiband Corp.*, a non-existent case).

13

have violated her civil rights through breach of contract," Compl., ¶ 8, but in her complaint never identified Alphabet's involvement in the alleged MetaMask hack.

In her Objections, Lahti contends that Alphabet's role in the case is adequately pleaded, claiming that security vulnerabilities in Google Chrome facilitated the hack. Doc. 35, PageID 318. She argues that Alphabet's responsibility for her losses in the hack arises from: Google Chrome security failures, Google Chrome serving as the primary access point for MetaMask, and Google Chrome's alleged oversight of the development of the MetaMask software. *Id.* at PageID 318–19.

The function of a motion to dismiss, however, is to "test[] the sufficiency of the complaint . . . it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Leeper v. HealthScope Benefits*, No. 2:19-cv-5401, 2020 WL 1290089 (S.D. Ohio Mar. 18, 2020) (citations, internal quotation marks and alteration omitted). So too for factual allegations raised in objections to an R&R; these also do not serve to properly amend a complaint. Lahti's factual allegations asserted for the first time in her objections "were not before the Magistrate Judge and, therefore, are not properly raised in an objection." *Hodges v. Rufus*, No. 2:24-cv-141, 2024 WL 469403, *1 (S.D. Ohio Feb. 7, 2024).

Given that the factual allegations in Lahti's Objections are not properly before the Court, the Court agrees that Lahti's claims against Alphabet are frivolous and devoid of merit; Alphabet's motion for dismissal under Federal Rule of Civil Procedure 12(b)(1) is properly granted on that basis. *Merkobrad v. Weaver*, 57 F.App'x 257, 258 (6th Cir. 2003) ("[A] totally insubstantial complaint . . . fails to confer subject matter jurisdiction on the district court."). Lahti's objections on this point (section C.1, Doc. 35, PageID 318–19) are **OVERRULED**.

    iii.    Motion for Leave to Amend (Doc. 26)

14

The Magistrate Judge recommends that Lahti's Motion for Leave to Amend (Doc. 26) be denied. The R&R concludes that the motion should be denied on grounds of futility, as Lahti's amended claims against Consensys—like her original claims—are subject to binding arbitration for the reasons set out above. Doc. 34, PageID 308. As Consensys points out, Doc. 36, PageID 353, Lahti makes no specific objections to the R&R's conclusions regarding futility of amendment as to Consensys. Accordingly, the Court reviews this portion of the R&R for clear error. *See Williams v. Excel Dev't Co., Inc.*, No. 1:24-cv-625, 2025 WL 218683, *2 (S.D. Ohio Jan. 16, 2025). Finding no clear error in the R&R's conclusion that Lahti's Motion is futile as to Consensys, the Court **OVERRULES** Lahti's Objections (section C.2, Doc. 35, PageID 320–26) on this point as to Consensys only.

Plaintiff's Motion to Amend as to Alphabet presents a much closer question. The R&R recommends denial of the motion to amend on grounds of futility because Lahti's claims against Consensys are subject to binding arbitration. Doc. 34, PageID 308. This basis for denial does not, however, apply to Alphabet. Lahti asserts in her objections that her amended complaint "clarifies and strengthens existing allegations, particularly regarding Alphabet's role in the events leading to [her] losses" and she should thus be allowed to amend her complaint to ensure her claims against Alphabet are fully heard. Doc. 35, PageID 323. Counsel for Alphabet did not file a Response to Lahti's objections.

Reviewing de novo the R&R's conclusions regarding Lahti's Motion to Amend the complaint as to Alphabet, the Court **SUSTAINS** these objections. Lahti's proposed amended complaint, Doc. 29-1, provides significantly more detail than her original complaint related to Alphabet's role in the events leading up to the filing of this action. She asserts that Alphabet "through Google, hosts Consensys's MetaMask application," Doc. 29-1, ¶ 16, that she

15

accessed MetaMask through Google Chrome, *id.* ¶ 17, that Alphabet "through its company Google, endorsed Consensys's MetaMask product as safe," *id.* ¶ 20, and that she "relied on Consensys' and Alphabet's representations about the safety of the MetaMask product as a material term before using the application." *Id.* ¶ 21. While Consensys filed a motion opposing Lahti's Motion to Amend, asserting that "[n]one of the [proposed amended complaint's] new allegations have any bearing on the question of arbitrability," Doc. 30, PageID 277, Alphabet, as noted, did not file a Response to the Motion to Amend.

On the present record, the Court cannot conclude that Lahti's Motion to Amend (Doc. 26) is futile as to Alphabet. Lahti's proposed amended complaint cures some of the defects Alphabet identified in its original motion to dismiss, including the sparse record of factual allegations pointing to Alphabet's involvement in the events giving rise to this dispute.

Lahti's claims may appear far-fetched, but Alphabet's Motion to Dismiss (Doc. 17) does not identify to the Court any categorical bar to her recovery in the factual circumstance alleged here—theft of cryptocurrency while using a platform facilitated by a web browser. Thus, the Court is unable to conclude that Lahti's Motion to Amend (Doc. 26) is futile. *See Andwan v. Village of Greenhills, Ohio*, No. 1:13-cv-624, 2014 WL 7366110 (S.D. Ohio Dec. 24, 2014) (allowing pro se plaintiff to amend certain claims as to certain defendants; "Pursuant to Rule 15(a)(2), Fed.R.Civ.P., leave to amend should be freely given. In addition, this Court construes *pro se* allegations liberally.").

For the reasons given, Lahti's Motion to Amend (Doc. 26) is **GRANTED** as to Alphabet.

    iv.    Motion for Temporary Restraining Order (Doc. 40) and Motion to Preserve Financial Evidence (Doc. 41)

Lahti has also filed two motions seeking preliminary injunctive relief against Consensys.[7] Because the Court grants Consensys's motion to compel arbitration in this Order, the Court will **DENY** both motions for preliminary injunctive relief. *See Castro Law, LLC v. JGW Debt Settlement, LLC*, No. 1:24-cv-815, 2024 WL 3522414 (N.D. Ohio July 24, 2024) (affirming prior order granting stay pending arbitration and denying request for preliminary injunction). This Court will refrain from hearing or deciding Lahti's requests for preliminary injunctive relief unless and until the arbitrator determines that Lahti's dispute with Consensys is one that is non-arbitrable and the Court's jurisdiction over the matter has been reasserted.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the R&R (Doc. 34) in all respects except for its denial of Plaintiff's motion to amend. That motion will be granted as to Alphabet only.

Accordingly, Consensys's Motion to Compel Arbitration (Doc. 15) is **GRANTED** and Plaintiff Lahti's claims against Consensys are **STAYED** pending the outcome of arbitration. Alphabet's Motion to Dismiss (Doc. 17) is **GRANTED** without prejudice to Plaintiff's filing an amended complaint. Plaintiff's Motion for Leave to Amend (Doc. 26) is **DENIED** as to Consensys but **GRANTED** as to Alphabet.

Further, Plaintiff's Motion for Temporary Restraining Order (Doc. 40) and Motion to Preserve Financial Evidence (Doc. 41) are **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 19, 2025

Hon. Jeffery P. Hopkins
United States District Judge

---

[7] Both motions specify that they are directed at Consensys only. Doc. 40, PageID 385; Doc. 41, PageID 411.